BRTJNOT, J.
 

 This is a proceeding, by rule, for the collection of a state license for the years 1927, 1928, and 1929, for conducting the business of cotton factor or commission broker in the city of Shreveport. The district judge rejected •the demand and the plaintiff appealed.
 

 The ease was submitted on an agreed statement of facts. The admitted facts are as follows:
 

 “Norman Mayer & Company, the defendant, is a copartnership composed of Norman Mayer, M. J. Ashford, J. M. Bowen and J. F. Finke, domiciled in the City of New Orleans, Louisiana, engaged in the cotton factorage and commission business, subject to license taxation under the provisions of Section 5 of Act No. 205 of 1924', as amended by Act 326 of 1926.
 

 “The gross commissions from the conduct of the business of Norman Mayer & Company during the past three years were:
 

 1926 .................. $186,875.00
 

 1927 ................... $248,424.00
 

 1928 ................... $226,829.36
 

 “Upon the basis of the commissions set forth, defendant has paid to the State of Louisiana through the tax collector at New Orleans license taxes in the following amounts:
 

 1927 ..................... $1,500.00
 

 1928 ..................... $1,800.00
 

 1929 ..................... $1,800.00
 

 “A board for the posting of cotton quotations and other data is maintained by Norman Mayer & Company in a room at No. 202 Milan Street in the City of Shreveport, in charge of and operated by two employees of the' Company, with direct telegraphic communication with the New Orleans Cotton Exchange. Chairs are arranged in front of the board within the room for the convenience of those wishing to obtain the information posted. Persons desiring to buy or sell cotton
 
 *340
 
 upon future contract through Norman Mayer & Company are permitted to inform an employee of the Company at the room maintained at No.
 
 202
 
 Milan Street of the proposed purchase or sale, which proposition is immediately communicated by such employee over Western Union or Postal telegraph to Norman Mayer & Company at New Orleans, where the purchase or sale requested is made by that Company upon the New Orleans Exchange or New York Cotton Exchange, or Chicago Board of Trade. When such transactions are effected, information thereof is immediately wired to an employee at No. 202 Milan Street, who informally advises the customer and a written confirmation is mailed from New Orleans. The business so conducted is strictly a brokerage business, no purchases or sales being confirmed until actually made in New Orleans, where all books and records are kept.
 

 “The employee of Norman Mayer & Company, as the deposits are received by him, makes out a deposit ticket and deposits these checks as and when received to the order of Norman Mayer & Company, New Orleans, Louisiana, in the First National Bank of Shreveport. In other cases, however, the cheeks are deposited directly by the customer to the order of Norman Mayer
 
 &
 
 Company, New Orleans, Louisiana, in the First National Bank of Shreveport. Immediately upon the receipt of the deposits the First National Bank of Shreveport wires Norman Mayer & Company, New Orleans, Louisiana, that they have received such deposits, giving the names and amounts deposited by each customer. This wire is sent in code. The representative of Norman Mayer
 
 &
 
 Company has no authority whatsoever to give credit to any customer.
 

 “Payments of proceeds of sales where profits are made by the customer are made sometime by telegram from the New Orleans office direct to the. Shreveport Bank for payment direct to the customer. At other times checks are drawn in New Orleans by Norman Mayer & Company on the Shreveport Bank or on a New Orleans Bank and mailed direct to the customer. At other times drafts are drawn by the Shreveport employee upon Norman Mayer & Company payable at New Orleans in favor of the customer. No checks of any kind or payments of any kind are made to the customer, nor checks drawn for any items or other expenses by the representative of Nor-' man Mayer & Company at Shreveport, and no local checking or bank account is maintained by the representative of Norman Mayer & Company at Shreveport.
 

 “The gross commissions from business originating in Shreveport during the three years in question were:
 

 1926 .................... $ 7,425.00
 

 1927 .................... $18,225.00
 

 1928 .................... $18,226.50
 

 “These sums were included in the total gross commissions first set forth herein and upon which basis license taxes were paid in New Orleans for the years 1927, 1928 and 1929.”
 

 In our opinion, the admitted facts conclusively negative the state’s contention that Norman Mayer & Co. conducted a separate place of business, as cotton factors and commission brokers, in the city of Shreveport.
 

 “Statutes and ordinances imposing license and business taxes must be construed strictly in favor of the'citizen and against the government. * * * License laws cannot be extended by construction, omissions cannot be supplied by the Courts, and no license-tax can be exacted which is not imposed by the words of the statute or ordinance.” Cooley on Taxation, vol. 4, par. 1693, p. 3401.
 

 
 *342
 
 The license demanded was levied under section 5 of Act 205 of 1924. The pertinent part of the section is as follows:
 

 “That for carrying on the business pursuits known as cotton factorage and commission business, * * * except as hereinafter provided, whether buying or selling for actual spot or future delivery where the intention of the parties is to make an honest and bona fide delivery, the license shall be based on the gross annual commissions and the brokerage on sales and purchases, and shall be fixed and graded, as follows, to wit,” etc.
 

 Counsel for appellant concedes that a license or occupational tax is not due by an agent who solicits business for another. He contends that the practical effect of the conveniences afforded defendant’s customers in Shreveport, and the manner in which its business there is conducted, localizes that business as a distinct and separate industry from the parent organization. In this contention he relies upon the case of Murrell, Sheriff, v. Bokenfohr, 108 La. 19, 32 So. 176, 177, a case in which the admitted facts were that the def.endant, a commercial enterprise in New Orleans, had a
 
 distributing depot and store
 
 in Crowley. Goods were shipped to the Crowley depot, not for the purpose of filling orders for goods previously entered, but in car load lots, to meet the anticipated demands of the defendant’s trade in that locality. The court said:
 

 “This business, we conclude, requires men to deal with one another on a considerable scale. The goods are shipped on orders received from the branch establishment. In the second place they are ‘kept there,’ the evidence discloses, and ‘distributed and delivered to Crowley retail trade from there as orders are received.’ The conclusion is inevitable that he sells to all comers. The practical effect of this is to localize the business, and to get a profit from another branch of industry, distinct and separate from the home office of defendant’s business. It is a- business for profit to be gained at Crowley through defendant’s business, and not the mere consignment of goods to be delivered to a- buyer or buyers at a private warehouse.
 
 * *
 
 * Defendant’s enterprise, as a branch of his store in New Orleans, is a business, as it consists in continuous sales and delivery of merchandise at the branch store.”
 

 A mere reading of the admitted facts in this record clearly demonstrates that not a single fact of the Bokenfohr Case is present in this case.
 

 A tax levied upon cotton factors or commission brokers is levied strictly upon the occupation pursued. To be held subject to the tax, it must appear that the agent or agency was engaged in the conduct of a local cotton factorage or commission brokerage business.
 

 From our appreciation of the facts, the extent of the power and authority of the defendant’s Shreveport agency was limited to furnishing information to defendant’s customers and to receiving and transmitting their orders to the defendant at New Orleans. These acts are merely incidental to the conduct of the New Orleans business and defendant, therefore, is not subject to the tax demanded. For these reasons, the judgment appealed from is affirmed.