197 So. 575

## RHODES v. SINCLAIR REFINING CO. et al.

### No. 35457.

June 28, 1940.

Rehearing Denied July 18, 1940.

Jim W. Richardson, of Bogalusa, for plaintiff-appellant.

Roy T. Osborn, of New York City, V. R. Tomlinson, of Fort Worth, Tex., Porteous, Johnson & Humphrey, of New Orleans, and Guy V. Rich, of Bogalusa, for defendants-appellees.

ROGERS, Justice.

Walter M. Rhodes brought this suit to recover damages for his alleged unlawful ejectment from a service station he was operating, in the City of Bogalusa, under a lease from the Sinclair Refining Company. The defendants are the Sinclair Refining Company and Albert L. Nye, its agent in Bogalusa. Defendants denied that plaintiff was unlawfully ejected from the leased premises. They averred, on the contrary, that plaintiff voluntarily surrendered the leased premises when he was requested to do so. The court below rejected plaintiff's demand, and he has appealed from the judgment.

On March 25, 1937, the plaintiff and the Sinclair Refining Company, one of the defendants, entered into three written agreements covering the operation of a service station owned by the Sinclair Company in the City of Bogalusa. The first agreement was for the lease of the service station for

a period of one year, beginning May 25, 1937, and ending May 24, 1938. The second agreement was a refined oil sales contract and designated plaintiff as the Sinclair Company's dealer in the City of Bogalusa. The third agreement was an arrangement for the rental of certain equipment by the Sinclair Company to plaintiff. Each agreement contained a clause authorizing the Sinclair Company to cancel the agreement upon giving five days' written notice.

Plaintiff operated the service station covered by the agreements until November 15, 1937, when they were terminated. Plaintiff contends on that date defendants forcibly and unlawfully ejected him from the leased premises. On the other hand, defendants contend that on that date plaintiff voluntarily agreed to give up the service station.

The issue in the case is solely one of fact, as to which the testimony is conflicting. The trial judge resolved this conflict in favor of the defendants. He found, as a fact, that plaintiff agreed to waive the five days' written notice and to relinquish the service station on November 15, 1937, the day he was checked out by the representative of the Sinclair Company.

There is no doubt that sharply contested questions of fact are generally more difficult to solve satisfactorily than questions of law. For this reason the rule is firmly established that where there is an irreconcilable conflict in the testimony an appellate court will not reverse the judgment of the trial court, if the evidence of the successful party, when considered by itself, is sufficient to sustain the judgment.

The rule is peculiarly applicable where testimony taken in open court is the basis of the finding of the trial judge. In such a case the finding must be given corresponding weight.

In this case, the trial judge had the witnesses under his observation and he heard them testify. He has analyzed their testimony and reviewed the surrounding circumstances in a written opinion filed in the record. The trial judge gives good reasons and a lucid explanation why the preponderance of the evidence rests with the defendants. We are unable to find any fault with them, and, accordingly, have concluded to adopt and make them a part of our opinion, viz.:

"Plaintiff testifies that on the morning of November 15, 1937, he was called to the hotel room of one Philip J. Coci, representative of the Sinclair Refining Company, and that A. L. Nye, the other defendant, was present. He says that Coci stated that he had come to check him (Rhodes) out of the service station, and when he asked Coci the reason for this the latter stated, it was due to the fact that there was not enough gas being sold at said station. Plaintiff denies that he agreed to be checked out of the station and states that his only reason for leaving was that in the afternoon, when the defendants together with others, came into the station for the purpose of checking him out, an argument ensued between them and his father and he got out for the purpose of keeping down trouble. He also states that from the way Coci talked to him he believed he would either have to get out or go to jail. Plain-

tiff admits an inventory was made of all the equipment and accessories in the station and that both he and his father were present, but had nothing to do with the taking of the inventory. He admits going to the store of Mr. Doremus, from whom he bought some of the accessories, on the night the inventory was taken, but states that he did not there agree to accept a specified amount in payment of his equity in the equipment. The testimony of the plaintiff is corroborated by that of his father, who was present in the filling station on the afternoon the inventory was taken, and was also present at the store of Mr. Doremus on the same night. In addition to himself and his father, the plaintiff offered as witnesses, Mr. W. H. Boler, Mr. E. A. Bates, Mr. Luther Horn, Jr., and Mr. Arthur Rhodes. The substance of Mr. Boler's testimony was that he was present at the Sinclair Service Station on the afternoon of November 15, 1937, at the time the inventory was being taken and it seemed to him that everyone around the station was in a bad humor. Mr. Bates' testimony was to the effect that Mr. E. P. Rhodes, the father of the plaintiff, stated to Mr. Coci that he might throw W. M. Rhodes out, but they still had a lease on the place. He further states that there seemed to be bad feeling between Mr. Coci and Mr. E. P. Rhodes. Luther Horn, Jr., who is an employee of the plaintiff, testifies that there was considerable argument around the station that afternoon and that Rhodes did not agree to get out unless the others would agree to give him his price for the grease gun. He testifies the inventory was made but he did not know much about it.

Mr. Arthur Rhodes testified that Mr. Coci stated the contract which the plaintiff had with the company was not a binding contract.

"Defendant produced as witnesses, Mr. Coci, Mr. Doremus, the Gillespie brothers, Howard Adams, A. L. Nye, Joe Newman and H. D. Himel. Both Coci and Nye admit they were in the Redwood Hotel together on the morning of November 15, 1937, and sent for Mr. Rhodes to come to the room. They both testify that when Rhodes arrived he was told by Coci that the latter had come to check him out of the service station. They also state that Coci told Rhodes the Company was not satisfied with the way the station was being operated; that it did not have the proper stock and the necessary gallonage was not being obtained to satisfactorily carry on the business. They further state that Coci called Rhodes' attention to the Company's right to cancel the contract upon giving Rhodes five days' notice, but that he further told Rhodes he did not see where this would be necessary because it looked like to him it would be better for both for Rhodes to be checked out immediately and let them take the station over. They state that plaintiff left the hotel room then for the purpose of thinking the matter over until that afternoon. According to their testimony they went to the service station that afternoon along with the Gillispie brothers, who were to take the station over, and an argument ensued about the price that was to be paid for certain equipment owned by the plaintiff. This was adjusted and the inventory taken, which they state was in the presence of plaintiff and agreed to by him. Mr.

Doremus, who sold the accessories to the plaintiff, was present at the taking of the inventory, as well as Mr. Adams, his clerk. They, together with Coci and the Gillispie brothers, state that plaintiff not only agreed to the inventory prices with Mr. Doremus, but that he gave the prices of certain goods which were not purchased from Mr. Doremus. All these witnesses state that after the inventory was taken, all of them, together with the plaintiff and his father, went to the store of Mr. Doremus for the purpose of checking the latter's books to determine how much plaintiff owed Mr. Doremus for accessories as it was understood that this amount was to be deducted from the inventory value and plaintiff was to receive a check for the difference between his equity and the price of said accessories; that the Gillispie brothers were to assume the indebtedness of plaintiff to Mr. Doremus; that the conference at Mr. Doremus' store lasted for some forty or fifty minutes and was participated in by the plaintiff, but that it was impossible to determine the exact amount to be paid Rhodes for the reason that there were some two or three tickets for gas which Mr. Doremus had purchased from Rhodes and these tickets were over at the filling station, so it was agreed between all parties that on the next morning the amount of these tickets would be determined, as well as some few coca-cola bottles which were not inventoried, and after this amount was ascertained on the next morning Mr. Gillispie was to make out a check to Rhodes and the latter was to come by the filling station for it. The evidence shows that Mr. Rhodes never received the check nor did he come by the filling station and inquire about it. Mr. Gillispie testified that he made the check out as per the agreement and offered it to the plaintiff but the latter refused it.

"In reaching a decision in this case it must be remembered that the plaintiff and his father, who are witnesses on one side, and Mr. Coci and Mr. A. L. Nye, who are witnesses on the other side, are all vitally interested in the outcome of this case. The Gillispie brothers, who were called by the defendants, do not have the same interest, but it should be borne in mind that they are now lessees of the Sinclair Refining Company and operating the station formerly operated by plaintiff. Mr. Doremus has no interest in the case, but did have quite a bit of trouble with Mr. Rhodes relative to the accessories which he sold. Mr. Adams, of course, is an employee of Mr. Doremus. However, irrespective of the interest of any or all witnesses in this case, and irrespective of how many times certain witnesses contradicted others, I believe that a proper decision can be reached herein by a consideration of the facts and circumstances on which all the witnesses agreed. Not a witness denied that the inventory was taken at the service station on the afternoon of November 15, 1937, and that the plaintiff herein was present at the taking of said inventory. Further, no witnesses deny that all those present at the taking of the inventory, which of course included plaintiff and his father, went to Mr. Doremus' store after the inventory was taken for the purpose of conferring further. Even the plaintiff, in answer to a question as to whether he had any dealings with Mr. Doremus that afternoon, states, on page 32

of the transcript, 'they kept after me to sign a release on the place and we went over to his store and made the agreement to transfer the stuff.' In the very face of plaintiff's testimony that he never agreed to relinquish the station, he admits that he was present at the taking of the inventory which could have no other purpose than the determination of his equity in the equipment and the accessories, and he further admits that he later was present at Mr. Doremus' store when, as he states that 'the agreement was made to transfer the stuff.' The word 'stuff' could relate to nothing except the accessories and equipment as shown by the inventory, and if it was not plaintiff's purpose to agree to be checked out of the station there was no reason for his presence at Mr. Doremus' store. He went there definitely to learn what he owed Mr. Doremus and thereby ascertained the exact amount of money coming to him. It is my opinion that if the amount Mr. Doremus owed plaintiff for gas and the coca-cola bottles had been inventoried, plaintiff would have accepted the check for his equity in the equipment less the amount owed Mr. Doremus that very night, and I am further of the opinion that he agreed to accept it as soon as these small amounts were ascertained and the deal was consummated on that night. There is no doubt in my mind but that the plaintiff was angered when told he was to be checked out of the station, but in his testimony there is an admission that he knew the contract he had with the defendant was binding and that it could be terminated by the defendant's giving him five days' notice. Even though he was angered when first

told this in the morning by Mr. Coci, after he had thought it over and realizing he could be checked out within five days, he later decided that it would probably be better if he could obtain a fair price for his equipment to sell out to the Gillispie brothers who were there on the ground ready to take the business over. This is exactly what happened and I am sure the argument which took place around the station that afternoon had to do with the prices placed on certain articles in the inventory. The plaintiff testifies that his reason for getting out of the station was to keep down trouble and stay out of jail. Plaintiff's actions on the afternoon of November 15, 1937, do not bear out this testimony. If he had been getting out of the station for the reasons as stated by him, he would have been angered and would not have, in any wise, participated in the taking of the inventory, and, further, after the inventory was taken he would not have gone to the store of Mr. Doremus, where the transfer was to be made, because he would have had no interest in any such transfer. On the other hand, the testimony of the defense witnesses, Nye, Coci, Doremus, the Gillispie brothers, and Adams, is borne out by the actions of the parties on November 15, 1937."

The trial judge found, and we think correctly, that plaintiff's allegations of fraud against the defendant A. L. Nye were not sustained by the evidence.

For the reasons assigned, the judgment appealed from is affirmed.

LAND, J., absent.