MILLER, Judge pro tem.
This suit and the companion case of Bol-den v. Reed and National Surety Corporation, La.App., 137 So.2d 648, which was consolidated with the present suit for trial, grew out of a headon automobile collision. Robert Daniel here seeks to recover for personal injuries, medical expenses, loss of earnings, and property damages, suffered as a result of an accident which occurred on December 25, 1959, involving a pick-up truck owned and operated by plaintiff, and a Dodge automobile owned by Hattie S. Reed, and operated by her husband, Orbie Reed, defendant herein.
The learned trial judge, in a well reasoned written opinion, found that plaintiff had failed to prove negligence on the part of defendant Reed by a preponderance of the evidence and rejected plaintiff’s demand. From the judgment so rendered, Robert Daniel has prosecuted this appeal, and his guest passenger James Luther Bolden has. appealed in the companion case.
*646 At tbe time and place of the accident, plaintiff accompanied by James Luther Bolden, who was seated alongside plaintiff, was headed north, moving up a ■gentle slope of Louisiana Highway 19 and .approaching the intersection with the Pride-Port Hudson road, while defendant, Orbie Reed, accompanied by his wife, who was ■seated alongside him, was headed south, moving down the gentle slope of the highway and away from the intersection. At the time and place of the accident, Louisiana Highway 19 was surfaced with blacktop approximately 22 feet wide and had a broken white line down the center with a yellow line marker in the north-bound traffic lane from a point south of the site of the accident to the intersection. The purpose of this yellow line was to prohibit north-bound traffic from crossing' the ■center line of the highway. At a point approximately 200 feet south of the intersection, one of the vehicles crossed over into the wrong traffic lane and caused the accident. All parties agree that the party that crossed the center line is responsible for the accident, as well they must, for when a collision results from one’s act of driving his vehicle into that part of the roadway reserved exclusively for traffic, proceeding from the opposite direction he is prima facie negligent. It is then incumbent upon him to show by clear and convincing evidence that his presence in the opposing traffic lane was due to unexpected and unforeseen circumstances over which he had no control and that he did not in any particular contribute to the mishap. See Rizley v. Cutrer, 232 La. 655, 95 So.2d 139; No-land v. Liberty Mutual Ins. Co., 232 La. 569, 94 So.2d 671; and Schick v. Jenevein, 145 La. 333, 82 So. 360. There are no contentions here made that the party who crossed over into the opposing traffic lane was justified in so doing, consequently this case presents only a question of fact for our .determination.
In addition to himself and his passenger, plaintiff’s four witnesses were Tom McKnight, and his wife, Earline McKnight, Herbert Sanders and his wife, Lillie Belle Sanders, all of whom claim to have been riding in the second car following defendant’s south-bound car. These four witnesses knew plaintiff since childhood, and although they denied being close friends of plaintiff, they called him by his first name.
In brief, plaintiff and four of his witnesses testified that defendant’s car was driven off the blacktop portion of the highway on the west shoulder some 250 feet north of the site of the accident, cut back towards but not entirely on the highway, was driven on the west shoulder again, and cut back on the highway at which time it crossed over into plaintiff’s traffic lane and collided with plaintiff’s truck. Plaintiff’s other witness, Lillie Belle Sanders, testified that defendant’s car was driven off the east shoulder of the highway and zig-zagged across the highway, striking plaintiff’s truck when it attempted to regain the south bound lane of traffic. There are other discrepancies in the testimony of plaintiff and his witnesses, the most important of which concerns how many, if any, cars were ahead of plaintiff just prior to the accident. Plaintiff testified that as he approached the intersection he was forced to slow down because there were three cars ahead of him, the foremost of which was turning right at the intersection. The witness James Luther Bolden remembered two cars ahead of plaintiff at that time, while the other witnesses remembered only one car ahead of plaintiff, which car they testified was at least 150 feet ahead of plaintiff and traveling fast. Plaintiff and all of his witnesses did agree on one thing however, that the accident occurred when defendant, Orbie Reed crossed over into the north-bound lane of traffic and hit plaintiff’s truck.
In addition to defendant and his wife, the witnesses called by defendant were Thomas E. Butler, and Troopers Joe Anselmo and Melvin J. LeBlanc. Of these three, only Butler was an eyewitness to the accident. Butler was standing about 30 feet south and a few feet west of the intersection of *647 Highway 19 and the Pride-Port Hudson road at the time of the accident. Troopers Anselmo and LeBlanc investigated the accident when they arrived at the scene some 35 minutes after it happened. These three witnesses did not know any of the parties involved, prior to the happening of the accident.
Defendant, his wife, and Butler, vigorously deny that the accident happened in the north-bound lane of traffic, or that the Reed car was driven off the highway prior to the accident. Mrs. Reed testified that she first saw plaintiff’s truck when she noticed the truck attempting to pass the car immediately ahead; that the last thing she can remember is seeing this truck pull out from behind the car into the south-bound lane of traffic. She further testified that her husband never did leave the highway nor his lane of traffic prior to the accident. Defendant Reed testified that he saw plaintiff’s truck prior to the accident, but he did not see the accident happen. He further testified that he never left the south-bound lane of traffic prior to the accident. Both defendant and his wife were rendered unconscious by the injuries suffered in the headon collision.
Thomas E. Butler testified that he saw the Reed car when it drove past his position alongside the highway, at which time the car was being driven in a normal manner and in the proper lane of traffic. He also noticed plaintiff’s pick-up truck just before the accident and he saw this truck swerve across the center line and collide with defendant’s car. He further testified that at the time of the collision there were no cars immediately ahead of plaintiff’s truck.
Joe Anselmo, who has been a State Trooper for 11 years, testified that he received the call to investigate the accident at 4:40 p.m., December 25, 1959, and arrived at the scene at 5 :05 p.m. that date. At the scene, he noticed that the Reed car had come to rest on its side headed south in the southbound lane of traffic some 50 feet past the point of impact. The Daniel truck remained at the point of impact, with the front end projecting some two feet inside the southbound lane of traffic. The debris, consisting of dirt, and pieces of the truck and car, was situated some two feet inside the southbound lane of traffic. He found a half-full fifth of wine in plaintiff’s truck. LeBlanc, the other trooper, was not familiar with the details of the investigation, having merely assisted in directing traffic at the scene of the accident.
A considerable portion of the testimony given by plaintiff and James Luther Bolden, both on direct and cross-examination, concerns the activities of these two from 8 :30 Christmas morning until 4:30 that afternoon, the time of the accident. Both plaintiff and Bolden were married men with young children and both left home at 8:30 Christmas morning ostensibly for the purpose of getting a haircut, which according to the testimony, took very little time. After getting a haircut they headed to Scotland where plaintiff called his brotther. While this line of testimony is not directly concerned with the accident itself, it does shed some light on the credibility of these witnesses. Without detailing the many contradicting and evasive answers given by these witnesses concerning the eight hours preceding the accident, it is sufficient to state that we believe, as did the trial judge, that considerable doubt has been cast on the credibility of Daniel and Bolden.
The only testimony tending to establish the point of impact in relation to the north or south-bound traffic lane which stands uncontested is the testimony of Trooper Anselmo that the wreckage debris was situated some two feet inside and entirely within the south-bound lane. We believe this is significant, especially since five of plaintiff’s witnesses claim to have been at the scene prior to the arrival of Anselmo and all had ample opportunity to see or not see the location of the debris. Able counsel for plaintiff, realizing the force and weight of this evidence, strenuously urges us to discount Mr. Anselmo’s testimony on the grounds that other parts of *648 his testimony, particularly the statement that he talked with Daniel at the scene of the accident, has been discredited. We find no merit in this contention. Although Anselmo may be mistaken about having talked with Daniel at the scene of the accident we don’t believe such mistake was material. It was material and important to the proper investigation of this accident that Anselmo, who conducted the investigation, talk to the participants and witnesses, but it is not material to the investigation that he talk to these people at any particular place. We can only expect him to remember with clarity, some 14 months after the accident, the matters that were material to the proper investigation. We agree with the learned trial judge that it is not important for us to decide whether or not Anselmo saw and talked with plaintiff at the scene of the accident. What is important to the determination of this case is the fact that Anselmo located the Daniel truck and debris about two feet west of the center line of the highway, and in the absence of explanation therefor, this establishes the point of impact between plaintiff’s and defendant’s vehicles.
Ultimately what we have to decide is which of two diametrically opposed and mutually exclusive versions of the accident we are to accept as correct. Where there is an irreconcilable conflict in the testimony, an appellate court will not reverse the judgment of the trial court, if the evidence of the successful party, when considered by itself, is sufficient to sustain the judgment. Rhodes v. Sinclair Refining Co., 195 La. 842, 197 So. 575. We do not find that the trial court was manifestly erroneous in accepting defendant’s witnesses’ version as to which traffic lane the accident happened in, as against the testimony of plaintiff and his witnesses. Under the well settled law of this state, the determination of which set of opposing witnesses is testifying truly is primarily for the trier of fact, and the factual determinations of the trial court should not be disturbed upon review except in the case of manifest error. Spiers v. Consolidated Companies, La.App., 125 So.2d 795; Thomas v. Mobley, La. App., 118 So.2d 476.
For these reasons, the judgment of the district court is affirmed, plaintiff to pay all costs of this appeal.
Affirmed.