FRUGÉ, Judge.
This is a suit for damages allegedly. caused to the plaintiffs’ soybean crop through defendants’ enumerated actions. Plaintiffs are Henry Lee Ellis and Jessie Ellis. Defendants are E. E. Edmundson, Jr., and R. A. Rozas, who was brought in by supplemental and amending petition. The trial judge concluded that the plaintiffs had not been damaged by any actions on the part of the defendants, and rendered judgment on the merits in favor of the defendants. We affirm.
The plaintiffs, partners in the farming operation, instituted this suit originally on February S, 1973, against the defendant asking for damages in the amount of $18,000 for the loss of their soybean crop for the 1972 crop year. The original petition stated that the plaintiffs had leased 360 acres of land from Edmundson by written lease, dated January 12, 1972, for the period from January 12, 1972, through December 31, 1972. The plaintiffs asserted that Edmundson agreed in a written lease to construct a bridge prior to the time of harvest across a drainage canal, and that the defendant failed to build a bridge, which plaintiffs allege contributed to the partial loss of the plaintiffs’ bean crop for that year. Second, the plaintiffs alleged that prior to the harvest time, the defendant caused to be flown over and seeded into the leased property rye grass which, at the time of the bean harvest, had grown to such a height that it was being cut and combined with the beans, which caused an increase in the water content that resulted in plaintiffs getting less money for their beans. Third, plaintiffs alleged in their original petition that the defendant allowed cattle to roam over the soybean crop of the plaintiffs which resulted in a complete destruction of part of the plaintiffs’ crop. The defendant’s answer admitted that the bridge was not built, but stated that he had built a road that served the plaintiffs better than the bridge; he asserted that the plaintiffs had never complained to him about the failure to build the bridge and that the plaintiffs had harvested and transported their crops without any difficulty and that the plaintiffs had sustained no loss whatsoever from the failure to build the bridge. He further admitted that rye grass had been flown over the plaintiffs’ leased premises. He stated in his answer that this same procedure had been followed the year before on the land leased by the plaintiffs and on the adjoining land, and that under the terms of the lease the defendant was specifically permitted to follow this practice. The defendant denied that the beans when harvested had an excess of water content. However, if there had been an excess of water content in the beans, it was alleged that the water content was the result of other causes such as excessive rain during the fall of 1972. The defendant denied that the plaintiffs had suffered damages as a result of cattle roaming on the premises and specifically denied that he, defendant, owned any cattle in the area of the leased land. Annexed to the answer of the defendant was a reconventional demand against the plaintiffs claiming damages for malicious prosecution. The reconventional demand was predicated on the fact that the plaintiffs had sued the defendants out of malice and revenge because the defendant had previously notified the plaintiffs that he would not renew their lease for 1973.
Plaintiffs filed an answer and general denial to the reconventional demand of the defendant. Later a supplemental and amending petition was filed by the plaintiffs which added R. A. Rozas as a co-defendant, alleging that Rozas had leased the property in question from the defendant for the 1973 crop year and that with the knowledge of Rozas, the defendant, Ed-mundson, had the Tanner Flying Service fly in rye grass. The petition further alleged that by the time the bean crop was harvested, the rye grass had grown to such a height that it was being cut and combined with the beans, which caused an increase in the water content of the beans and resulted in the plaintiffs getting less money for their beans. The plaintiffs fur *722 ther alleged in their petition that the defendant, Rozas, with the knowledge and consent of Edmundson allowed his cattle to roam over the soybean crop of the plaintiffs. An additional $10,000 was added to their claim for damages due to mental anguish. The answer to this amended petition denied the essential allegations. The judgment of the district court denied both the principal demand and the reconventional demand.
The court in its written reasons for judgment stated that the lease filed in evidence did in fact show that Edmundson agreed to build a bridge across the canal. The evidence indicated that he did not build this bridge; however, the evidence showed he provided a better alternate route with an all-weather approach to the field that the plaintiffs rented. The evidence further indicated that the plaintiffs had approved and used this alternate road, and that they had harvested their beans and hauled them over this road. Apparently they never made any protest to the failure of the defendant to build the bridge until after their crop harvest on December 20, 1972. The evidence further showed that the alternate route was provided at a greater cost to Edmundson than that of the bridge specified in the lease and that it in fact made the crop land of plaintiffs more easily accessible to them than the specified bridge. The court found that there was no proof that the plaintiffs had suffered any loss from Edmundson’s failure to build the bridge as provided in the lease agreement.
The court next considered the seeding of the rye grass on the crop land farmed by the plaintiffs. The evidence indicated that this had been done by Tanner’s Flying Service on or about August 27, or 28, 1972. The evidence further indicated that the plaintiffs had not asked that this be done nor were they consulted about it. The testimony also indicated that this seeding was a common practice in the area and that the beans were harvested in the fall before the rye grass became any problem. The record indicated that the grass grew during the winter months and provided winter grazing for the cattle. The court was satisfied that the rye grass blades were very light and even if the tops were cut with the beans the combines had no problem separating the beans from the rye blades and other foreign grass matter. The court found that there was some testimony from witnesses that the grass even helped in the harvesting of the beans in wet seasons, and the evidence indicated that 1972 was a wet season. The court concluded in its written reasons for judgment that there was no proof whatsoever that the rye grass planted by the defendants caused any additional moisture in their beans that they harvested on the rented land. The court concluded that the plaintiffs’ own sales records indicated that the water content of the beans from the leased property was no greater on the average than that recorded from beans harvested from other fields farmed by them. The court also found that the provisions of the lease indicated that entry by the lessor was contemplated for the purposes of fall planting as had been the practice on this land in the past.
Thirdly, the court considered the alleged cattle damage to the crops of the plaintiffs. The court found that the evidence showed that Edmundson owned no cattle in the area of the rented lands in 1972, that he never permitted or authorized the grazing of cattle on the lands he rented to the plaintiffs by anyone in 1972, that he at all times tried to maintain fences around their fields, repaired the same where cuts had been made by deer hunters and was always very cooperative and helpful to the plaintiffs. The court found that there was some evidence that Rozas had cattle in the general area of plaintiffs’ rented land. Rozas admitted that he drove a herd of about 100 head of cattle across the land rented by the plaintiffs, but that this was after the harvest of their crop. This herd was driven from west to east to another pasture with several riders accompanying the drive to minimize the damages they would do to the land rented by the plaintiffs. Plaintiffs themselves admitted that *723 this was done over open acreage where they had already harvested their beans.
The plaintiffs testified that they saw cattle grazing in their bean field several times and they produced pictures of some of the cattle which were admitted into evidence. Rozas denied ownership of these cattle and only admitted driving the herd of 100 head across the bean field. The plaintiffs’ testimony at trial indicated that they felt that the cattle and grass caused the difficulty that they encountered while trying to harvest their bean crop. The court found that the testimony and evidence did not support the plaintiffs’ allegations of a complete loss of part of their crop by reason of the cattle. The court found that the evidence was not convincing that Rozas’ cattle were allowed to feed or graze on the rented property, and that there was no proof of damage which could relate to a drive of cattle across the property. The court concluded that the general reduction of the yield was more plausibly attributable to other causes, such as bug and worm infestation or too much rain making the delayed harvest a cause of the loss.
With regard to the reconventional demand of the defendants, the court stated that damages for malicious prosecution could not be allowed in a reconventional demand. Furthermore, the court stated that there was no proof offered by the defendants to substantiate their claim. Therefore, the court denied the claim.
The plaintiffs in their brief contend that the trial judge was iri error in finding that it was customary in the area to plant rye grass and soybeans at the same time. They rely on the testimony of Mr. Chisholm which indicated that he would not plant the rye grass and soybeans together on the same tract of land. However, testimony of other witnesses indicated that the general custom in the area was to plant rye grass toward the end of the growing season of the soybeans, and the trial judge was not manifestly in error to find this a matter of custom among farmers in the area.
The plaintiffs further contend in their brief that paragraph 5e of the lease agreement was violated when the lessor allowed the rye grass to be planted in the leased area. They argue that the condition for the lessor entering the property was that the lessees complete their harvest on the property before the lessor could enter. However, the trial judge found that the agreement contemplated that the lessor be allowed to come onto the property for planting purposes prior to the completion of the harvest by the lessees. He based this opinion on the fact that a similar procedure had been followed in previous growing seasons. There being no manifest error in these findings by the trial judge, they will not be disturbed. See: Jones v. Blossman, 209 La. 530, 25 So.2d 85 (1946); Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 (1964).
In the defendants’ brief they argue that the reconventional demand should have been dismissed as of nonsuit rather than rejected as though on the merits,- for the reason that the court during the trial of the case stated that it would not accept or permit any evidence on the reconven-tional demand on the grounds that the jurisprudence was to the effect that a civil suit for malicious prosecution could not be filed or issues determined until the suit which forms the basis for the suit for damages for malicious prosecution is disposed of and judgment is rendered in favor of the defendants. The defendants argue that for this reason they did not attempt to prove any damages on the demand. However, under Article 2133 of the Code of Civil Procedure the defendants in this case should have answered the appeal in order to bring this issue before this court. Since an answer was not filed by the defendants-appellees, this court is without jurisdiction to deal with this issue.
*724 For the reasons assigned, the judgment of the trial court is affirmed and the costs of this appeal are assessed against the plaintiffs-appellants.
Affirmed.