42 N.J. Super. 355 (1956)
126 A.2d 368
EDWARD J. REID, PLAINTIFF-RESPONDENT,
v.
MONMOUTH OIL COMPANY, A BODY CORPORATE, DEFENDANT, AND ANTHONY AGNELLINO, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1956.
Decided November 1, 1956.
*358 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. Robert V. Carton argued the cause for plaintiff-respondent (Mr. O. Ernest Gatta, attorney).
Mr. Samuel A. Larner argued the cause for Anthony Agnellino, defendant-appellant (Messrs. Budd, Larner & Kent, attorneys).
The opinion of the court was delivered by CLAPP, S.J.A.D.
Plaintiff, a policeman, while walking his beat one night tripped and fell over a formboard protruding two or three inches above the sidewalk. The defendant Rini and men working with him had laid the formboard, while constructing a new sidewalk in place of the old one. Plaintiff sued the following for his injuries: Monmouth Oil Company, the landowner; Anthony Agnellino, the general contractor who had apparently contracted to build a gas station and incidentally the new sidewalk; and Joseph A. Rini, who contracted with Agnellino to do all the work shown on certain drawings and specifications not in evidence. Whether Rini was an independent contractor or was in fact to some extent Agnellino's agent, or whether he shared with Agnellino in some measure the control over the work, constitutes one of the controversies here. The charge of negligence rests in considerable part on the failure to put up lanterns over the sidewalk and place barricades around the work while it was in progress.
The case was dismissed as to Monmouth Oil Company, but went to the jury as to the other two defendants. The jury *359 found no cause for action with respect to Rini, though he filed no answer and entered no defense; but it held Agnellino liable for apparently $9,026.25. He appeals.
There are a number of errors in the court's charge to the jury. The court charged:
"I further charge you that even if you should find that Rini was an independent contractor in his relationship with Agnellino, but if you find that Agnellino in employing Rini should have recognized that the work would require the creation during its progress of a condition involving a peculiar risk of bodily harm to others unless special precautions were taken, then Agnellino is equally liable with Rini * * *."
Agnellino's attorney objected to that portion of the charge on the ground that the principle involved, even if sound (Gibilterra v. Rosemawr Homes, Inc., 19 N.J. 166, 171 (1955) speaks of a situation which would "necessarily" involve an unreasonable or peculiar risk of bodily harm), was not pertinent to the case, and that the charge was therefore prejudicial. The objection is well taken. Guzzi v. Jersey Central Power & Light Co., 12 N.J. 251, 260 (1953). The mere reconstruction of a sidewalk under the conditions presented here is not the sort of work which necessarily gives rise to a peculiar risk of bodily harm and which therefore subjects an employer of an independent contractor to liability unless he himself takes special precautions. Cf. the cases holding that such work does not constitute a nuisance. Bush v. Margolis, 102 N.J.L. 179, 181 (E. & A. 1925); Kahn v. King Petroleum Corp., 13 N.J. Super. 334, 338 (App. Div. 1951), and cases cited. Plaintiff contends that this part of the charge by its terms implicates Agnellino "equally * * * with Rini," and hence that a jury, which absolved Rini, could not have relied on it. But the absolution of Rini for some reason not adequately accounted for does not demonstrate that Agnellino was not prejudiced by the court's instructions here.
There are inconsistencies in various parts of the charge. Thus after the court had given instructions (as stated) subjecting Agnellino to liability if the jury found that he *360 should have recognized that the work involved a peculiar risk of bodily harm, the court later told the jury that the mere excavation of a public sidewalk for the temporary purpose of repair or construction does not constitute a nuisance. As one may surmise from the foregoing, we have difficulty in reconciling these instructions. Cf. Gibilterra v. Rosemawr Homes, 32 N.J. Super. 315, 318 (App. Div. 1954), affirmed 19 N.J. 166, 171 (1955).
Again, the court told the jury not only that Agnellino should be held liable as above stated with respect to a peculiar risk of bodily harm; but also that he should be held if Rini was not a skilled and competent subcontractor (there was no testimony on this subject); and further that he was liable along with Rini if the failure to provide lights or barricades was due in part to
"Agnellino's failure to promptly and timely deliver to Rini or to the place of work supplies and materials." (Italics added. There was no testimony as to any failure to deliver supplies and materials promptly.)
On the other hand (notwithstanding these instructions indicating that Agnellino may be held on the several grounds stated even though Rini was an independent contractor), the court told the jury that if Rini was in sole control, then he alone was under obligation to provide barricades and warning lights. Likewise at another point the court told the jury that Agnellino could not be held unless he interfered or gave instructions as to the method or means of carrying out the construction of the sidewalk.
A confusing lack of harmony in the charge arises also as a result of the court's instruction that under the contract between Rini and Agnellino, "Rini was retained as an independent subcontractor" (and it may be noted that at another point in the charge, an independent contractor was defined as one who carries on work for another and, in manner and means, is independent of that other's control). This direction would seem, unless it were explained, to be a direction that Rini was in fact an independent contractor. *361 That, however, does not comport with several parts of the charge, such as the instruction to the jury that if Rini was under Agnellino's direction and control and Agnellino had possession of the property, then Agnellino was under the same obligation to use reasonable care as other possessors of land.
As Agnellino's attorney pointed out to the court in the course of taking objections to the charge, these inconsistencies all spring from the fact that the court gave the charges requested by plaintiff and also those requested by Agnellino, notwithstanding inconsistencies.
Incidentally it may be noted (since a new trial is herein directed) that the court in its charge placed on the plaintiff the burden of proving that he was free from contributory negligence.
The judgment must be reversed. However, on a new trial Agnellino cannot be held under the doctrine of respondeat superior for the acts or defaults of Rini, because the jury by its verdict exonerated Rini and plaintiff has not taken an appeal. Kelley v. Curtiss, 16 N.J. 265, 270 (1954); Vaniewsky v. Demarest Brothers Co., 106 N.J.L. 34, 37, 38 (Sup. Ct. 1929), affirmed 107 N.J.L. 389 (E. & A. 1931).
The question then is whether there is ground for holding Agnellino liable apart from that doctrine. Agnellino lays stress on the terms of his contract with Rini. It is therein provided that Rini was "to perform all the work" and "do everything required by" certain drawings and specifications; in contradistinction to Agnellino, however, he was "to furnish only the labor" (italics added), and Agnellino was to furnish "the materials for said work." The drawings and specifications were not produced, and we therefore do not know with certitude the nature of Rini's undertaking. The contract seems to have been offered by Agnellino as some evidence of what the parties intended to do with respect to the question which of them was to have control over the manner of doing the work; and it indeed is evidentiary on that matter, for proof of an intention to enter upon some *362 course of conduct is probative on the question whether that course was in fact undertaken. 1 Wigmore, Evidence, § 102 at 534, 2 Id. § 237 (3d ed. 1940). However, the contract is not entirely clear, and in any event is merely one circumstance to be reckoned with.
On the other hand, plaintiff in support of his contentions refers us to other circumstances. There is evidence that Agnellino hired some of the men for Rini. Moreover, though Agnellino was at the job only once or twice a week, he sometimes (but "not all the time") gave instructions to Rini's men as to what they were to do. For example, he apparently gave instructions to one of Rini's men at one time to break up the sidewalk. Rini further testified that
Agnellino "would tell me one day to break the sidewalk generally and put the curbs in or to do certain aspects of the job in a certain way."
Agnellino spent "almost every night" at his office working with Rini. It may be noted, too, that Rini himself worked with the laborers whom he and Agnellino procured. On the basis of these circumstances plaintiff seems to contend that Rini did not have the status of an independent contractor; that on the contrary he was a foreman or in any event shared the control with Agnellino.
Moreover, after the accident Agnellino spoke to Rini, saying he was going to get lanterns and materials for a barricade, and thereafter he did so, giving them to Rini. Plaintiff relies to a considerable extent on the testimony that after the accident Agnellino "told" Rini "to put up a barricade around the section [which Rini] had already dug up." Such acts and statements after the accident are evidential, not for the purpose of showing negligence, but of establishing the extent of Agnellino's control. The evidence was properly admitted in view of the actual controversy over the issue of control raised by the extrinsic proofs cited above. Spinelli v. Golda, 6 N.J. 68, 78 (1950); Daniels v. Brunton, 7 N.J. 102, 110 (1951). (However in accordance with some informal requests made by Agnellino's counsel during the *363 trial, the jury should have been instructed that this proof was evidentiary only on the issue of control. The failure so to charge was very damaging to Agnellino, but whether it was plain error under R.R. 1:5-3(c), we need not decide.)
It is of significance, too, that Agnellino did not take the stand. Taking all the foregoing circumstances together, and notwithstanding that the proofs are thin and at points contradictory, we nevertheless conclude that a jury could properly have found that Agnellino had in fact retained, participated in, or taken control over the operative detail of doing the work. Further, it could properly have found that as a result of his failure to exercise this control with reasonable care, he on his own account, or together with Rini, caused a condition to arise which created an unreasonable risk of injury to a pedestrian proceeding along the sidewalk at night unless he (Agnellino), or he and Rini, also saw to it that barricades and lanterns were put up. As to the effect of actively interfering with and participating in control, see Riley v. Jersey Leather Co., 100 N.J.L. 300, 302 (E. & A. 1924). There may be other theories under which Agnellino could be held, but we need not consider them here, for we think plaintiff was entitled to go to the jury on the theory stated.
A question is raised with respect to an interrogatory, which we need not decide. For we are satisfied that there should be a new trial in any case; if the trial court had ruled differently on the point, plaintiff conceivably could have adduced the proof in some other way. In connection with the new trial, the question now raised may be eliminated by an amendment of the answer to the interrogatory, made in due time.
The judgment will be reversed and a new trial granted, but at such trial the defendant Agnellino may not be held under the doctrine of respondeat superior for the acts or defaults of Rini.