102 So.2d 488

Mrs. Shirley **LATTER,** Widow of Dr. Lee C. **SCHLESINGER,** Individually and as Testamentary Executrix of the Succession of Dr. Lee C. Schlesinger,

v.

Rufus W. **FONTENOT,** Collector of Revenue, State of Louisiana.

No. 43174.

April 21, 1958.

Rehearing Denied May 26, 1958.

Levi A. Himes, Robert L. Roland, Baton Rouge, for defendant-appellant.

McCloskey & Dennery, Moise W. Dennery, New Orleans, for plaintiff-appellee.

SIMON, Justice.

Pursuant to and under the authority of our statutes dealing with revenue and taxation[1] the Collector of Revenue for the State of Louisiana filed a notice of assessment dated December 30, 1954 showing additional Louisiana income tax, penalty and interest, in the total sum of $9,316.45 due by Dr. Lee C. & Mrs. Shirley L. Schlesinger for the calendar year 1951, of which amount the sum of $8,031.42 was shown as delinquent income tax due and $1,285.03 shown as the amount of interest due to January 15, 1955. The notice of assessment also notified the said taxpayers that they had sixty calendar days from the date of the notice in which to either pay this additional assessment or file an appeal with the Board of Tax Appeals for a review or redetermination thereof. Whereupon in due time Mrs. Shirley Latter, widow of Dr. Lee C. Schlesinger, petitioned the Board of Tax Appeals to have the said assessment reviewed and upon a redetermination thereof said assessment be declared invalid. It was undisputably shown that prior to and during the years 1944 to 1951 Dr. Lee C. Schlesinger was an actively practicing physician residing in the City of New Orleans. In 1951 he sold property at a net gain of $190,765.18, which gain was not included in the taxable income for that year for the reason as contended by the taxpayers that the said property constituted a capital asset located outside the State of Louisiana and therefore the said gain was exempt from Louisiana income tax under the provisions of LSA–R.S. 47:51[2].

On the other hand, the Collector contended that the property in question was not a capital asset within the meaning of our income tax laws, and as defined in LSA–R.S. 47:72[3].

The record discloses that Mr. Harry Latter, realtor, was the father-in-law of

1. LSA–R.S. 47:1561 et seq.
2. LSA–R.S. 47:51: "Gains from the sale or exchange of capital assets located outside the State of Louisiana shall not be included in gross income and shall be exempt from taxation under this Chapter."
3. LSA–R.S. 47:72: "Losses from sales or exchanges of capital assets shall be allowed as deduction only to the extent of the gain from such sales or exchanges.
   "The term 'capital assets' means all property of the taxpayer, whether or not connected with his trade or business, except stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale to customers in ordinary course of his trade or business, or property, used in a trade or business, of a character which is subject to the allowance for depreciation provided in R.S. 47:65; and land used in a trade or business of the taxpayer."

Dr. Schlesinger and advised him concerning the acquisition and disposition of the property located in Memphis, Tennessee. Mr. Latter testified that the property originally consisted of three parcels of ground located in the business district of Memphis; that the improvements thereon were one to two hundred years old and in a state of decay; that he advised his daughter and son-in-law to acquire the respective properties at the lowest price obtainable and to permit tenants to retain occupancy until the three properties could be consolidated and sold as a single unit for commercial purposes and for the highest market price available. He testified that the sole purpose of the purchase was to offer for sale on the market as soon as practicable the consolidated properties as a single unit and thus realize a profit from the transaction. In accord with this expert advice Dr. Schlesinger, acting through real estate agencies for the purchase, management and subsequent sale, acquired the first parcel of the property on August 14, 1944, the second on August 6, 1946 and the third on December 30, 1946. Rentals were paid to these agents by the tenants then occupying the buildings under monthly rental agreements until the 1951 sale. From the time of the last purchase when the three parcels were consolidated into one unit until the subsequent sale in 1951 continuous efforts were made to interest property purchasers. It appears that immediately following the sale in 1951 the purchaser demolished the buildings and improvements located thereon and constructed a commercial building occupying the whole site.

The Collector of Revenue contends that the purchase, the use for rental purposes and the profitable sale of the property during the interim from 1946 to 1951 constituted the holding of the property primarily for sale in the ordinary course of the joint trade or business of buying, renting and selling real estate and hence taxable.

The record also shows that during the years from 1948 to 1951 Dr. Schlesinger was a member of a partnership consisting of himself, his wife and her brother, Shepard Latter, which owned commercial real estate in New Orleans and elsewhere and which was operated and managed by Harry Latter, realtor. However, the transaction involving the Memphis property which is here sought to be taxed was the sole business venture of this nature engaged in by Dr. Schlesinger other than his partnership affiliation.

It is clearly established by the record that the operation and management of this partnership was in the exclusive hands of Harry Latter, realtor. The taxpayers did not give or engage any time, attention or labor in connection therewith. It is true

that they benefited by whatever profits the partnership assets yielded them. However, it cannot be fairly said that their affiliation with this partnership was such as would be sufficient to constitute their being engaged in the trade or business of buying, renting or selling realty.

After a hearing before the Board of Tax Appeals judgment was rendered in favor of the taxpayer and against the Collector of Revenue, ordering the subject assessment set aside and annulled. Thereafter the Collector of Revenue appealed [4] to the Civil District Court for the Parish of Orleans for a review of the said judgment seeking a reversal thereof. The trial court affirmed the findings and ruling of the Board, and the Collector appealed and presents to us the identical question heretofore presented, whether the taxpayers herein were engaged in the ordinary trade or business of buying, renting and selling realty so as to necessarily conclude that the subject transaction was amenable to taxation.

We are in accord with the definition expressed in Holmes, Federal Income Tax (6th Ed.) at page 969, wherein it is said: "The terms 'trade' and 'business' have been defined as follows: 'that which occupies and engages the time, attention and labor of anyone for the purpose of livelihood, profit, or improvement; that which is his personal concern or interest; employment, regular occupation, but it is not necessary that it should be his sole occupation of employment.' "

Whether the management of real estate for profit is the "engaging in business or trade", within the meaning of the Federal Revenue Act raises a federal question, which cannot be controlled by state decisions. Pinchot v. Commissioner of Internal Revenue, 2 Cir., 113 F.2d 718. Conversely, whether management of real estate for profit is the "engaging in business or trade" within the meaning of a state statute cannot be controlled by federal decisions. The decisions of Federal Courts can only serve as mediums for light and guidance.

It is universally and fundamentally true that even though property is acquired for revenue, it does not necessarily mean the investor is engaged in a trade or business. A person can be engaged in more than one trade, occupation or profession. A doctor may engage in some other profitable business besides his regular business or profession; so may a lawyer; so may one who is employed as a general manager of a business concern.

In Higgins v. Commissioner of Internal Revenue, 312 U.S. 212, 61 S.Ct. 475, 478, 85 L.Ed. 783, the United States Supreme Court held that to determine whether the activities of a taxpayer are "carrying on a

4. LSA–R.S. 47:1434, 1435, 1436.

business" requires an examination of the facts in each case.

In Fackler v. Commissioner of Internal Revenue, 6 Cir., 133 F.2d 509, 511, the petitioner was engaged in the practice of law and was held to be also engaged in the trade or business of operating a building for rental purposes by the Board of Tax Appeals (now the United States Tax Court). In reaching these findings, the court considered, from the attending facts and circumstances, the primary intention of the taxpayer, in acquiring the leasehold and renting the property thereon, was to engage in the trade or business of acquiring, managing and renting property. The court said:

"It is a fair inference from the evidence that petitioner acquired the leasehold with the primary intention of operating the building upon it for profit and that he was *not* holding the property merely as an investment and solely for the purpose of collecting rents without rendering personal service to tenants." (Italics ours.)

■ In the instant case the record shows that the annual revenue received by the taxpayers from their *individual real estate* investment in the Memphis property and from the partnership of which they were members far exceeded the income from Dr. Schlesinger's medical practice. This is a circumstance to be considered and weighed but is not all embracing, and neither is the fact that the taxpayers claimed allowance for depreciation on the property. There is no evidence herein to show that the taxpayers were engaged in buying and selling real estate, renovating it, collecting rents, activities which would indicate that they were engaged in the trade or business of buying, renovating, renting and selling real estate. On the contrary, the evidence shows that the primary intention of the taxpayers was to acquire the three parcels of property for the purpose of consolidating them into one unit and to be sold as soon as the market afforded profit. While awaiting the opportune time marketwise to sell the same tenants continued occupancy of the buildings at nominal rent. It is shown that the personal operating and management, including payment of taxes and the collection of rentals, was in charge of the realtors who had negotiated the sales to the taxpayers from the acquisition of the properties until their sale in 1951. We fail to find any evidence that the taxpayers herein gave of their time, personal attention or labor in this venture, or that they were holding it for profitable rental purposes as a trade or business.

■ Under the surrounding facts and circumstances here presented we are constrained to hold that the manifest intention and purpose of the taxpayers in acquiring the subject properties was a single in-

vestment venture rather than an "engaging in trade or business" which implies an element of continuity or habitual practice, regular occupation or employment and not occasional, isolated or disconnected acts.

██ The record further discloses after the case was tried on the merits and submitted for decision by the trial judge, but before judgment was rendered, the taxpayers filed a motion to dismiss on the ground that the Civil District Court of the Parish of Orleans was without jurisdiction for the reason that the taxpayer is domiciled in the Parish of Jefferson whereas LSA–R.S. 47:1436 provides that a judgment of the Board of Tax Appeals may be reviewed, in the case of individuals, by the district court for the district wherein the taxpayer is a resident or by the district court mutually agreed to by the Collector and the taxpayer. The trial judge correctly held said motion to be an exception to the jurisdiction ratione personae and filed too late. The trial judge further correctly concluded that the taxpayer's failure to except to the jurisdiction ratione personae in limine litis was not only an acceptance of that forum, but was tantamount to an agreement to submit to the jurisdiction of that court.

██ We conclude therefore that the Board of Tax Appeals and the District Court resolved the sole issue herein and correctly determined that the subject property was a capital asset and that therefore under LSA–R.S. 47:51 the gain realized in the sale of the said capital asset located in another state is non-taxable. The rule is too well crystallized in our jurisprudence to necessitate discussion or citation that where the issue involved is one purely of fact a fair and sound analytical disposition thereof by the trial judge warrants an affirmance.

Accordingly, for the reasons assigned, the judgment is affirmed.

McCALEB, J., dissents with written reasons.

McCALEB, Justice (dissenting).

It seems clear to me from the facts that Dr. Schlesinger was substantially engaged in the buying, selling and rental of real estate as a trade or business; that he represented in his income tax returns that he was so engaged and that, accordingly, the taxpayer herein is now estopped from contending otherwise. This conclusion appears inescapable from an examination of the income tax returns filed by Dr. Schlesinger for the years 1947, 1948, 1949 and 1950, while he was owner of the properties located in Memphis, which reveal that the major part of his income was derived from real-estate ventures in partnership with his wife and her brother, included in which

was the rental and operation of the Bienville Hotel in New Orleans.

During 1947, Dr. and Mrs. Schlesinger received a gross rental of $10,160 from the properties in Memphis and claimed depreciation thereon amounting to $5,500; in 1948, they received a gross rental of $11,460 and claimed depreciation amounting to $5,850.49; in 1949, a gross rental of $13,182, and claimed depreciation of $5,850.49 and, in 1950, the gross rental was $11,945 and they claimed the same depreciation of $5,850.49.

Under the provisions of Section 9(L) of Act 21 of 1934, as amended, which was in effect at the time these returns were made by the Schlesingers, a deduction from gross income for depreciation was permissible only on property used "in a trade or business".[1] Accordingly, the taxpayers, having received a credit for depreciation on these properties of well over $20,000 during the years of their ownership, by representing that they were assets used in their trade or business, should not now be permitted to reverse their position and contend that the profit made on their sale is not taxable because they were capital assets and not " * * * land used in a trade or business of the taxpayer".

I respectfully dissent.

1. When this provision was incorporated in the Revised Statutes in 1950, as R.S. 47:65, it was amended to provide that depreciation is allowable on the property used "in the trade or business or [that] held for the production of income."