286 So.2d 676 (1973)
Cavell GALLOWAY
v.
EMPLOYERS MUTUAL OF WAUSAU et al.
No. 5632.
Court of Appeal of Louisiana, Fourth Circuit.
November 30, 1973.
Rehearing Denied January 8, 1974.
Writ Refused March 1, 1974.
*678 Francipane, Regan & St. Pee, Chester Francipane, Metairie, for Employers Mutual of Wausau, Jack Wilson and Walter Morton.
Badeaux, Discon & Cumberland, J. Michael Cumberland, New Orleans, for plaintiff-appellee.
Beard, Blue, Schmitt & Treen, A. J. Schmitt, Jr., R. M. Johnston, New Orleans, for Luther-Bowers, defendant-appellant.
Before SAMUEL, J., and CONNOLLY and DURAN, JJ. Pro Tem.
MELVIN J. DURAN, Judge Pro Tem.
This is a third party tort action. The plaintiff, Cavell Galloway, was employed by W & A Engineers, Inc. as a machinist. Within the course and scope of his employment, he was involved in an accident that resulted in the traumatic amputation of his entire penis. This lawsuit is against Jack A. Wilson, Walter Morton and Luther Bowers, as executive officers of W & A Engineers, Inc. and against their liability insurer, Employers Mutual of Wausau. There was a trial by jury, with a verdict of $200,000.00 in favor of the plaintiff. It was admitted by the defense that Wilson and Morton, President and Vice-President respectively of W & A were executive officers of that corporation. It was denied that Bowers was an executive officer. The question of whether Bowers was an executive officer within the terms of the insurance policy was tried by the judge alone, and his judgment was in the affirmative. All other issues were tried by the jury.
The appellants are: Employers Mutual of Wausau, Jack A. Wilson and Walter Morton. The appellees, filing separate briefs and represented by different counsel are: Cavell Galloway and Luther J. Bowers. (Employers Mutual, without prejudice to its position, defended for Bowers in the trial court). We affirm the judgment of the trial judge alone, and we affirm the jury verdict and the judgment rendered thereon.
We delayed our decision in this matter because, at the time of oral argument, there was pending in the Louisiana Supreme Court the hearings on two other cases which are determinative of the major issues in this case. These cases, more fully discussed later, are Canter v. Koehring Co., La., 283 So.2d 716 and Fontenot v. Insurance Company of America, La., 283 So.2d 733.
It should likewise be noted that the U.S. Fifth Circuit Court of Appeals Decision in Strickland v. Transamerica Insurance Co., 481 F.2d 138, though rendered July 3, 1973 had not been published when we heard this case. Finally, on August 31, 1973, the Louisiana Supreme Court denied writs in Hall v. Hartford Accident & Indemnity Co., 281 So.2d 753. All of these cases, especially Canter and Fontenot, weighed heavily in our consideration of this case.
In almost all of these third party tort actions, (we say almost rather than all because of the possibility that we may have missed one or two), there are perennially presented to the appellate courts five major issues, to wit:
(1) Was the immediate "boss of the operation" an executive officer of the company?
*679 (2) Did that "immediate boss" owe a duty to the injured man of providing him with safe equipment and safe working conditions?
(3) What should have been taken into consideration in determining whether there was a negligent breach of that duty?
(4) Was the injured employee contributorily negligent?
(5) What weight should be given to the trial court's determination of these four preceding issues of fact?
The situation is no different on this appeal. We will address ourselves to these issues, but not in the order in which they appear hereinabove.
Issues No. 1 and No. 5
Issue No. 1 is present only in those cases wherein there is an insurance company defendant. The determination of this issue is important because of the plaintiff's necessity to include the individual among the insureds who are protected by the policy insuring "executive officers." While it is true that our law does permit these third party tort actions to be brought against fellow employees who are Not Covered by insurance, the truth of the matter is, no such case has reached the appellate courts to our knowledge. Perhaps the plaintiffs' theoretical considerations here weigh more heavily than do the theoretical fears of those who anticipate "disaster" for the fellow employee to be casted. Are we allowed to make a presumption here? If so, may we not reasonably presume that the closeness between fellow employees prevents them from suing one another when there is no insurance shield? Are they really fighting one another in these cases? Witness Bowers' position on this appeal wherein he casts himself as an appellee, asks that we affirm the judgment holding him to be an executive officer. Does not our law permit a judgment to be in an amount commensurate with the defendant's ability to pay?
It can serve no useful purpose here to recite All of the facts upon which the trial court concluded that Luther Bowers was an executive officer, since they are peculiar to this case alone. Suffice it to say, we have reviewed the voluminous record sent up to us and we are prepared to say that had the trial judge not found Bowers to be an executive officer of W & A, we would then have found reversible error. That corporation's entire business activity, the day-to-day management of its corporate business, its purpose for existence was placed entirely in the hands of three men: (1) Wilson, its President (admittedly an executive officer) whose managerial responsibilities included design, some sales, financing, engineering and job bidding; (2) Morton, Vice-President in charge of general office operations and supervision, customer relations and some sales (also admittedly an executive officer) and (3) Bowers, whose title was "shop foreman" but whose functions and responsibilities far exceeded his title. He had under his management and direct control the entire production of the company; the supervision, hiring and firing of everyone in the plant itself (some thirty men). Without the products manufactured and produced under the full and complete authority of Bowers, Wilson and Morton would have had difficulty justifying their existence; would have had nothing to bid for, nothing to finance, nothing to sell, no need for customers, engineering or designing. Noteworthy in their appeal is the appellants' argument (on another point) that neither Wilson nor Morton were even present at the company's place of business when the plaintiff was injured. Bowers, third in command, was therefore left in full and complete charge of the entire operation. His only two superiors were Wilson and Morton, all facts firmly established by the record.
In disposing of Issue No. 5, we need go no further than Justice Tate did in the *680 Canter decision, where he so succinctly states:
"When there is evidence before the trier of fact which, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable. The reason for this well-settled principle of review is based not only upon the trial court's better capacity to evaluate live witnesses (as compared with the appellate court's access to a cold record), but also upon a proper allocation of trial and appellate functions between the respective courts. See Andrews v. Williams, 281 So.2d 120 (La. Sup.Ct.1973); Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 (1964); Schlesinger v. Fontenot, 235 La. 47, 102 So.2d 488 (1958); Holmes Co. v. Foret, 229 La. 360, 86 So.2d 66 (1956); Rosenthal v. Gauthier, 224 La. 341, 69 So.2d 367 (1953); Rhodes v. Sinclair, 195 La. 842, 197 So. 575 (1940); and many other decisions cited at West's Louisiana Digest "Appeal And Error," and 1011. See also Robertson, Appellate Review of Facts in Louisiana, 21 La.L.Rev. 402 (1961)."
Issues No. 2 and No. 3
In their original brief and more forcefully again in their supplemental brief (which we allowed the parties to file after the Canter and Fontenot decisions were handed down), the appellants argue that the criteria previously established but more specifically set forth in Canter for determining when an individual is liable, when applied to Wilson, Morton and Bowers, exonerate them from liability.
These criteria as we understood them are: (1) the employer must owe a duty of care to the employee; (2) that duty is delegated by the employer to the individual defendant; (3) that duty was breached by the defendant through his own personal fault, whether by malfeasance, misfeasance or non-feasance and (4) that personal liability cannot be imposed on the individual just because he has some general administrative responsibility. Rather, he must have a personal duty toward the injured plaintiff. He may delegate the duty or responsibility to a subordinate, and hence escape personal liability but only if (a) he is not personally at fault in creating the unsafe condition; or (b) he can show he did not personally know or should not be charged with constructive knowledge of the fact that the delegated duty is not being discharged and (c) with authority to do so, he nevertheless fails to remove the danger or risk.
These appellants strenuously argue that requirement No. 2 has not been met. They argue that the corporation (W&A) did not delegate to Wilson or Morton, or anyone else for that matter, the duty of providing a safe place for the plaintiff to work in, or safe equipment to work with. These men were asked:
QUESTION TO MR. WILSON: Has there ever been a meeting of the Board of Directors or the officers of the corporation, designating yourself as a party in charge of safety in the shop?
ANSWER: No.
QUESTION TO MR. MORTON: Mr. Morton, was there ever a meeting of the officers of the corporation which determined and delegated the duty of safety to any one person?
ANSWER: No, Sir.
The evidence, taken as a whole indicated to the contrary. Wilson, Morton and Bowers *681 were delegated in toto all of the employer's duties and obligations. They were totally and completely in absolute charge of all corporate activity. This was placed in their hands by the Board of Directors or the Board remained silent, letting them do "everything" and hence tacitly delegating or approving of their conduct, actions, etc. It is quite obvious that if the Board of Directors did not specifically delegate "safety" to these men, then safety was included, along with all other duties delegated to them in general.
There is additionally evidence (admissions) that for the two year period preceding the plaintiff's injury, every three months, Employers Mutual sent out to the plant a safety engineer who met with and discussed safety factors with both Morton and Bowers. These meetings were for workmens compensation purposes, suggesting, checking upon, establishing safety procedures for workmen, ascertaining that exposure was reduced to a minimum. Wilson had the general administrative duty of providing safety. This responsibility he either delegated to Morton and Bowers or he was perfectly content to let them assume and discharge it. Wilson was further in close contact with the plant environment. He was physically in the plant several times a week, except when out of town. He bought the lathe that injured Galloway, and helped him install it when it arrived. He knew or should have known that Morton and Bowers were not discharging the duty owed to Galloway, yet he failed to cure the risk of harm. He just let the situation before his eyes go from bad to worse. Witnesses working there testified the situation had not materially changed in months. The arguments that these defendants did not owe the plaintiff a duty and that there was not delegated to them "safety" apparently impressed the jury as much as it impresses us.
Because of conflicting decisions in the Circuit Courts of Appeal, the Canter decision faces head on and fully discusses the third issue. The Court in Canter states:
"When and under what circumstances is the officer, agent, or employee of an employerprincipal liable to a third person (including a co-employee), when injuries caused to such third person result from the breach of a duty imposed by his employer or a principal upon the officer, agent or employee?
"In essence, the conflict between the circuits is:
"(a) when a duty is imposed upon an officer, agent, or employee solely by reason of the employment or agency relationship, is this duty owed exclusively to the principal-employer; so that a third person has no cause of action in tort against the officer, agent or employee individually, even if the latter's breach of duty causes reasonably foreseeable harm to the third person? Maxey v. Aetna Casualty & Surety Co., 255 So.2d 120 (La.App. 3rd Cir. 1971), and its progeny in the Second and Third Circuits.
"Or instead
"(b) May such breach of employment-agency duty give rise to a cause of action against such individuals by a third person injured as a result of the breach? Adams v. Fidelity & Casualty Co. of New York, 107 So.2d 496, (La.App.1st Cir. 1958) and its progeny in the First, Third, and Fourth Circuits, including Johnson v. Schneider, 271 So.2d 579 (La.App.1st Cir. 1972)."
The Supreme Court then proceeds to overrule or disapprove of Maxey and Dulaney v. Fruge, La.App., 257 So.2d 827 and the line of jurisprudence in accord therewith:
... "Insofar as they appear to hold that the duties imposed under an employment or agency relationship are exclusively owed to the employer or principal and are irrelevant in determining whether a legal duty *682 is owed to a third person by the officer, agent, or employee."
The Court then proceeded to specifically approve of Adams and Chaney v. Brupbacher, La.App., 242 So.2d 627 and the line of jurisprudence in accord therewith.
The appellants here relied heavily in their briefs and oral argument on the rationale and jurisprudence of Maxey and its related cases, specifically disapproved by the Supreme Court. The appellees relied on the rationale and jurisprudence of the Adams case and its related decisions, which received the stamp of approval.
Until Canter was handed down, both attorneys were correct. The briefs of both were done in scholarly fashion.
The plaintiff alleged that his fellow employees, executive officers of the company, were negligent in that they did not furnish him with safe equipment or with a safe place in which to work; that these three men were not only the cause of these deficiencies but that they had it within their power and authority to remedy the situation and simply failed to do so.
W&A Engineers, Inc. operates a relatively small metal fabricating plant. They design and manufacture all kinds of metal products to suit the needs of customers. At the time of his accident, the plaintiff was ordered to operate a large turret lathe. This heavy piece of machinery had an exposed worm gear. When the operation was begun, it was discovered that the sump was empty and in need of water. Water and oil are placed in the sump and are pumped onto the cutting tool and metal being worked to keep them cool. The plaintiff stepped over the exposed worm gear and with a hose filled the sump. He was returning to the front of the machine, via the same route. As he stepped over the worm gear, his foot landed on a piece of scrap metal. It moved, he slipped and fell in a sitting position on top of the moving worm gear. His pants caught in the gear and in a matter of seconds, his entire penis was traumatically and totally amputated.
That lathe was purchased by Wilson about two years earlier and was seldom used. It was installed in a corner of the plant by Wilson and Galloway initially. Was this equipment hazardous? The jury received the testimony of Florian Cornay a Certified Safety Professional, past president of the New Orleans chapter of the American Society of Safety Engineers. He testified that the unguarded exposed worm gear did not meet minimum safety standards; that the condition could have been easily and inexpensively remedied by fabricating a shield with shop personnel and available materials. This was contradicted by the defendants themselves who questioned the expertise and quality of Cornay.
The plaintiff attempted to show that after this accident, happened, the defendants did in fact fabricate and install such a protective shield over the worm gear. This evidence was not allowed to go to the jury and a proffer thereof was made. The appellees argue on appeal that we should consider this evidence, not as proof of the prior condition being hazardous, but as evidence of the fact that the defendants had it within their authority to remedy the situation. He cites McCormick on Evidence, Section 252; 2 Wigmore Evidence, Section 283, p. 157; 170 A.L.R. 6 and 64 A.L.R.2d 1296, et seq.; Schwartau v. Miesmer, 50 N.J.Super. 399, 142 A.2d 675 and Reid v. Monmouth Oil Co., 42 N.J.Super. 355, 126 A.2d 368, as authority for an "exception to the general rule for introduction of such evidence." It is inferentially argued further that we may also use this proffer of evidence as the proof of the expertise of Cornay over that of the defendants themselves.
We believe the evidence to have been properly withheld from the jury. Since the jury did not receive the evidence, and properly so, we may not consider it either, for any purpose.
*683 The weight and sufficiency of a witness's testimony falls within the purview of the trier of facts, as is the right to resolve conflicting testimony. We believe the jury had a reasonable factual basis for its findings and evidence enough to form a reasonable evaluation of credibility and we find no manifest error for us to reverse. The jury performed its duty well and we are not at liberty to substitute our opinion for theirs (assuming but not admitting we are of a different opinion).
The record further shows ample evidence that the three individual defendants were responsible for the purchase and use of the unsafe lathe. Additionally, they were not only responsible for the unsafe conditions under which the plaintiff worked, but they had knowledge of these conditions and did not remedy them, though they had it in their power to do so. What were these dangerous conditions?
(1) The lathe in question was located in a seldom-used corner of the plant, where materials were haphazardly stored and where debris, overages or scraps of metal, pipe, sheets of plate, wire, etc. were allowed to accumulate month after month.
(2) The lighting was inadequate and in the process of being remedied. Indeed, the power supply for the lathe itself was a long extension cord placed on the floor.
(3) Stored very close to the lathe itself, and seriously interfering with the operator's passageway, causing him to work in cramped, crowded quarters were: large A frames, stacks of knocked-down metal scaffolding and two very large recently-manufactured metal turn tables. These turn tables were twelve to fifteen feet long and weighed several thousand pounds each. Fellow employees said these objects were "six to twelve inches from the lathe"; close enough for "a man to have to squeeze through."
In addition to the testimony that established these facts, there is in evidence several large color photographs and a large cardboard diagram of the lathe and the shop layout showing the location of the various objects. We will simply state again that we can find no manifest error in this jury's conclusions and findings of fact.
There remains for us to consider the issue of contributory negligence. The defense argues that Galloway with 20 years of experience as a machinist knew about the danger of the lathe's exposed worm gear. He was in the shop daily and therefore, knew about the conditions under which he worked. When he attempted to perform his work, he assumed the risk inherent therein, and was contributorily negligent when he stepped over the worm gear.
This court in Chaney v. Brupbacher, supra, stated:
"... a workman's superior cannot create or permit danger and send the workman into it with a warning (none given here) and escape liability on a theory that the workman was contributorily negligent merely by going into the danger. The workman's only other alternatives are to tell his superior how to run the job or quit.
"... The test of negligence is reasonableness. While it may be true that the reasonable man would wish to avoid the known risk here, an employee is not entirely free to do so. He cannot simply decline to do the work, because he would then subject himself to a loss of his job and his means of support for self and family. It would not have helped Chaney to point out the danger to Owens, because Owens already knew of it. Nor could Chaney tell Owens how to run the job. It cannot be fairly said that Chaney elected to work under the dangerous conditions (the danger not being an intrinsic feature of Chaney's work). Thus, as we see the question, it is whether the reasonable laborer (with a wife and three children to feed, clothe and house) would quit his job or expose himself to being fired, without any immediate prospect *684 of another job, rather than work in the presence of a danger which his job did not necessitate and which he had never previously been called upon to tolerate. We simply cannot answer that question affirmatively. We believe Chaney's conduct measured by the reasonable man standard was not negligent, and the defense of contributory negligence therefore falls."
In Hall v. Hartford Accident & Indemnity Co., 281 So.2d 753 (Cert. denied Aug. 31, 1973) this court stated:
"One of the purposes of establishing industrial (safety) factors is to impose a standard of care upon a party who knows or should know of the dangers of various manufacturing methods and procedures and who is in the best position to eliminate these dangers. When the party charged with the responsibility of observing safety factors fails to do so, it is grossly unjust to place the blame for a resulting accident on the person who poured the last cup of water before the defective dam broke, unless that person also exercises a substantial amount of knowledgeable control over the dangerous situation. There was no such knowledge or control by plaintiff in the present case. We conclude that the plaintiff's conduct was reasonable under the circumstances known by him, while the conduct of Allstate's insured was not in consideration of the circumstances which were known (or which should have been known by him)."
In this case, there is testimony that the plaintiff could have gotten to the sump and filled it with water by going outside the building, walking some 150 feet (and back) to the hose, rather than stepping over the worm gear. Additionally, he had the possible choice of disrupting the other workmen and other shop operations by placing into use a heavy duty overhead crane. With this crane, he could have picked up the "A" frame, turn tables, etc., moving them out of his way. The procedure, in addition to disrupting the other shop operations and workmen would have consumed an estimated one or one hour and a half.
The jury did not consider the 150 foot trip outside the building to get to the waterhose, nor the use of the overhead crane to be fair or reasonable alternatives. Neither do we. Before Galloway can be held contributorily negligent, for not following an alternative course of action, it must be shown that the alternative is in itself reasonable.
We feel confident that, using hindsight, knowing Galloway was to be seriously injured, Wilson, Morton and Bowers, acting collectively or individually, would have been more than willing to let him use the overhead crane; they would have encouraged his use of it. But would these same defendants have been just as willing to allow Galloway to use the crane, would they have encouraged his doing so, if they knew he would not be injured? Conduct or action is not negligent because an accident occurs. On the contrary, accidents occur because of negligent conduct.
Since there has always been and always will be a plea of contributory negligence in these third party tort actions against fellow employees, it may be well to look a little further into the concept. If a highway repairman were to be told by his boss to work in the open highway among fast-moving vehicles without protective barriers, etc. the workman should have "better sense" than to do so. If an electrical lineman were told by his boss to work on energized high voltage wires without his protective gloves, he ought to have "better sense" than to do so. If a workman performs his job in the face of an obvious danger, then he is contributorily negligent. But he is not to be judged as contributorily negligent just because he fails to stop, to analyze the possible alternatives and, with some superior wisdom, calculate the relative advantages and disadvantages *685 of these alternatives before he acts. In other words, if the safe alternative is as readily available and as obvious to the workman as is the danger of not choosing it, then the workman is guilty of contributory negligence in performing the dangerous task.
Chaney had "better sense" than to tell Owens: "Get an electrician out here to remove or de-energize those power lines or I will not operate the crane on this job." Canter had "better sense" than to tell the engineers on the job: "Revise your calculations and take into consideration the added weight of the appurtenances before you send me up there to help lift the vessel." Hall had "better sense" than to tell Treen: "You better install 45 p. s. i. safety valve on this air line before you ask me to use it to inflate tires." Galloway had "better sense" than to tell Bowers: "Use the overhead crane to remove the objects crowding me at my lathe and locate them somewhere else, before telling me to work at the lathe." Using the term "better sense" as it is quite universally understood in common parlance, if a workman has "better sense" than to choose the alternative which would keep him from being contributorily negligent, then he is not contributorily negligent. This is just another way of saying he is acting reasonably.
For the reasons herein expressed, the judgments of the jury verdict and of the trial court alone are both affirmed. Appellants to pay all costs.
Affirmed.
SAMUEL, J., dissents with written reasons.
SAMUEL, Judge (dissents with written reasons).
I must dissent from the majority opinion and decree on the ground that plaintiff was guilty of contributory negligence which certainly was a proximate cause of the accident. The factual conclusions reached by my colleagues, and apparently also reached by the jury, together with a few other facts which are found in the record, which other facts are completely uncontradicted by any other evidence and not disputed by any of the parties, are amply sufficient to show such negligence as a matter of law. As such negligence alone should bar any plaintiff recovery, there is no need for me to discuss the other issues.
Plaintiff testified that the machine had to be in operation in order to put the required amount of water and oil mixture in the sump. To accomplish that purpose he had gone between the lathe and a turntable, a route which required stepping over the rapidly spinning and exposed worm gear. After filling the sump he attempted to return to the front of the machine by the same route.
The spinning worm gear was so close to his crotch that, in order to prevent his pants from catching in the gear as he stepped over, it was necessary for him to hold up his pants at the crotch. In returning to the front of the machine he slipped on a metal plate as he was stepping over the worm gear which caused him to fall forward, the spinning gear caught his pants, and the very serious injuries resulted.
As I see the matter, plaintiff had three alternative methods of safely filling the sump. First, as stated in the majority opinion, he could have gone outside the building and walked some 150 feet and back. Second, he could have cleared out the machinery and debris which prevented easy access to the machine. There appears to have been enough help available to accomplish this and, by his own estimate, this would have taken approximately 45 minutes. Third, he could have had one of the other men working in the shop turn the machine off while he passed the gear, turn it on again when he had safely reached the other side of the gear so that he could fill the sump while the machine *686 was in operation, and after the sump had been filled turn the machine off while plaintiff returned.
Admittedly, alternate routes must be reasonable. But such reasonableness must be determined, at least in some measure, in the light of the danger involved. Here there can be no question that stepping over the rapidly spinning worm gear was an extremely dangerous, even a foolhardy, maneuver.
While it is arguable that the first two alternatives mentioned above may have taken too long a time, or be too arduous, an argument doubtful because of the extreme danger involved, it appears to me that the third mentioned alternative was reasonable and obvious. Under these circumstances I am of the opinion that the plaintiff was guilty of gross contributory negligence and his claim should be dismissed.
Accordingly, I respectfully dissent.