STEPHEN J. WINDHORST, Judge.
| «.In this summary proceeding to collect occupational license taxes against 45 defendants, Newell Normand, Sheriff and Ex-Officio Tax Collector for the Parish of Jefferson (“Appellant”), appeals the trial court’s judgment in favor of 42 defendants, dismissing his claims against them. For the reasons that follow, we affirm.

PROCEDURAL HISTORY:

Appellant filed a summary proceeding against 45 defendants,[1] seeking to collect delinquent or unpaid occupational license taxes, interest, penalties, and attorney’s fees from each defendant for the tax years 2003 through 2008. 1st Lake Realty, Inc. (“1st Lake”) was the only defendant to make any payment of the assessed taxes prior to trial. The remaining defendants contested the application of the occupational license tax claiming that they did not engage in “business” subject to the occupational license tax.
Trial was held on June 13, 2012. After appellant rested his case, two of the defendants, HMF Investments Co., L.L.C. and Levee Run Apartments, moved for an involuntary dismissal. The trial court grant *612 ed the involuntary dismissal, | ¡¡dismissing appellant’s claims against these two defendants. Defendant, 1st Lake, also moved for an involuntary dismissal claiming the evidence showed it had paid all occupational license taxes and interests owed. Appellant argued that 1st Lake did not pay all of the penalties owed. The trial court deferred 1st Lakes’ motion to the merits.
The trial court rendered judgment in favor of appellant against 1st Lake in the amount of $712.50 in penalties and $71.25 in attorney’s fees, and in favor of the remaining 42 defendants, dismissing all of appellant’s claims against them. Appellant filed this appeal seeking review of only that portion of the judgment rendered in favor of the 42 defendants.

FACTS:

The 42 appellees are partnerships or limited liability corporations that own various apartment complexes located in Jefferson Parish. Each of the appellees has a separate management contract with 1st Lake for the management of the properties they own. Pursuant to the management contracts, 1st Lake receives a management fee of between four to six percent of the gross revenues generated by the properties depending on the terms of each contract.
The management contracts give 1st Lake the authority to conduct all operational and managerial rights and duties as to each respective property. 1st Lake conducts all of the day-to-day business for each property, including determining the amount of rent to charge, leasing the units, collecting rent, marketing, hiring and firing the employees that work at the individual properties, maintenance, and accounting for receipts and expenses relating to the properties. 1st Lake provides on-site management offices on most of the properties [2] and staffs |4the offices with its own employees, including a manager, assistant manager, maintenance workers, and grounds workers.
Tenants housed at the properties pay their rent checks to the on-site management office. All rent monies collected by 1st Lake are deposited into a master bank account owned and operated by 1st Lake.[3] From the master bank account, 1st Lake pays its employees’ salaries, all expenses, maintenance costs, real estate taxes and insurance. 1st Lake is reimbursed by ap-pellees for direct expenses incurred per the terms of the management contracts. Any surplus cash is paid directly to the individual partners or members of the corporations that own the properties in a monthly cash distribution.
The management contracts delegated all operational and managerial authority to 1st Lake. Appellees only retained the authority to be consulted on certain repairs that exceeded a stated dollar amount and the right to terminate the respective management contract in accordance with its terms.
Appellees are not involved in the management or operation of the properties. Appellees own the real estate, but they do not have a place of business nor do they have employees. Appellees do not own any bank accounts. They do not enter into any leases with any of the tenants nor do they collect rent. Appellees do not have keys to any of the on-site management offices.

LAW AND ANALYSIS:

In his first assignment of error, appellant claims that the trial court erred *613 in finding that appellees were not engaged in “business” pursuant to the Jefferson Parish occupational license tax.
The imposition of an occupational license tax by a municipality or parish is authorized by La. R.S. 47:341. The Parish of Jefferson is granted authority to | .¡impose an occupational license tax by Jefferson Parish Code of Ordinance, Part II, Chapter 35 — Taxation, Article VI — Occupational License Tax. Jefferson Parish Ordinance Section 35-153 authorizing the imposition of an occupational license tax was adopted in 1987. The ordinance provides:
... there is hereby levied an annual occupational license tax upon each person, association of persons, partnerships, firms and corporations pursuing any trade, profession, vocation, calling or business in the parish, subject to license under Section 28, article 6 of the 1974 Louisiana State Constitution and Louisiana R.S. 47:341 through 47:368, as amended.
Thus, to impose an occupational license tax: 1) the tax must be imposed on a “person,” “partnership,” etc., and 2) the person or entity taxed must be engaged in a “trade, profession, vocation, calling or business” subject to license as set forth in La. R.S. 47:341 et seq.
A “person” is defined in Section 35-154(10) as including “an individual, firm, corporation, partnership, association or other legal entity.” Appellees do not dispute that they are considered “persons” pursuant to Section 35-135.
Here, the primary dispute involves the meaning of the word “business” as it is used in Section 35-153. Appellant argues that as owners of rental property, appel-lees are engaged in business subject to the occupational license tax. Appellees argue that they are investors and as such are not engaged in “business” subject to the tax.
Section 35-154(9) provides the definition of business as it is used in Section 35-153. Business is defined as including “any business, trade, profession, occupation, vocation or calling.”[4] Thus, Section 35-154(9) defines “business” with the word “business” without any indication as to what “business” includes or excludes.
| (^Interpretation of the word “business” as it applies to the parish ordinance imposing the occupational license tax is a question of law. Questions of law are subject to de novo review. Cleco Evangeline, LLC v. Louisiana Tax Com’n, 01-2162 (La.4/3/02), 813 So.2d 351, 353. Findings of fact made by the trial court are reviewed under the manifest error or clearly wrong standard. Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.4/12/93); Rosell v. ESCO, 549 So.2d 840 (La.9/12/89).
Statutes and ordinances that purport to impose business and license taxes must be strictly construed in favor of the taxpayer and against the tax collector. Gertrude Gardner, Inc. v. McNamara, 359 So.2d 644, 649 (La.App. 1 Cir.1978), writ denied, 362 So.2d 578 (La.1978). License laws cannot be extended by construction, omissions cannot be supplied by the courts, and a license law cannot be exacted, unless it is imposed by the words of the statute or ordinance. Id., citing State v. Norman Mayer & Co., 170 La. 337, 127 So. 743 (1930). If a tax statute is susceptible of more than one reasonable interpretation, the construction in favor of the taxpayer must be adopted. Cleco, 813 So.2d at 356.
When a law is clear and unambiguous and application would not lead to absurd consequences, no further interpretation *614 may be considered. Harrah’s Bossier City Inv. Co., LLC v. Bridges, 09-1916 (La.5/11/10), 41 So.3d 438, 446-447, citing La. C.C. art. 9; Cleco, 813 So.2d at 354. This principal applies to tax statutes. McLane Southern, Inc. v. Bridges, 11-1141 (La.1/24/12), 84 So.3d 479, 483. When a law is ambiguous or not clear, or its application would lead to absurd consequences, courts look to secondary rules of interpretation to ascertain the meaning of the law. Id. A statute or law should be interpreted pursuant to its plain language. Cleco, 813 So.2d at 354; Gregor v. Argenot Great Cent. Ins. Co., 02-1138 (La.5/20/03), 851 So.2d 959, 964. The general prevailing meaning of a word 17must be applied when interpreting statutes. Cleco, 813 So.2d at 354; Gregor, 851 So.2d at 964.
Appellant claims that to aid the court in interpreting the word “business,” the court should rely on the definition of business as set forth in La. R.S. 47:301.[5] La. R.S. 47:301 defines business as including “any activity engaged in by any person or caused to be engaged in by him with the object of gain, benefit, or advantage, either direct or indirect.” Appellant argues that the definition of business as used in Sections 35-153 and 35-154(9) should not be interpreted to be narrower than the definition used in La. R.S. 47:301. Appellant contends that conforming the definition of business as it is provided in Section 35-153 to La. R.S. 47:301 would achieve a consistent body of tax law and complement the legislative intent to give “any business” a broader meaning.[6]
Appellees counter that appellant’s definition of business is too broad and would include anyone who makes an investment even though the occupational license tax omits any mention of investments and the ownership of investments within the definition of business. Appellees further argue that La. R.S. 47:301’s definition of business is inapplicable to the facts of this case because it is under the chapter for sales and use tax, not the chapter for occupational license tax. Appellees contend that the occupational license tax imposes its own definition of |sbusiness that is different from La. R.S. 47:301. Furthermore, La. R.S. 47:302 provides that the sales tax is imposed “upon the sale at retail, the consumption, the distribution, and the storage for use and consumption in this state, of each item or article of tangible personal property, as defined herein.” Thus, appellees argue that the sales tax is imposed on the user and the purchaser, not upon an investor.
*615 In order for a person to be subject to the parish occupational license tax, the person must be engaged in a “trade, profession, vocation, calling or business”. The parish ordinance defines business as “business.” In determining the common and approved usage of an undefined word, “[dictionaries are a valuable source.” Cleco, 813 So.2d at 354; Gregor, 851 So.2d at 964.
The word “business” is defined in Black’s Law Dictionary (6th Ed.1990), as: “employment, occupation, profession, or commercial activity engaged in for gain or livelihood; that which habitually busies or occupies or engages the time, attention, labor, and effort of persons as a principal serious concern or interest or for livelihood or profit.”
The Webster’s II New Riverside Dictionary defines “business” as “One’s occupation. Trade: commerce. A commercial enterprise ...”[7] Webster’s New Universal Unabridged Dictionary defines “business” as: “employment; occupation; profession; calling; vocation; means of livelihood; that which occupies the time, attention, and labor of men, for the purpose of profit or improvement.”[8]
Thus, the general definition of business indicates that it is an activity that requires a substantial amount of time and attention and some physical effort. It does not expressly include, and does not seem to include by extension or implication, investment or the ownership of property for investment. In [¡¡determining whether business could include investment, it is necessary to determine what the word “investment” means.
Black’s Law Dictionary (6th Ed.1990) defines “investment” as “an expenditure to acquire property or other assets in order to produce revenue; to place money or property in ... real estate ... so it may produce revenue or gain.”
The word “investment” is defined in Webster’s New Universal Unabridged Dictionary as “the act of investing; specifically ... the laying out of money in the purchase of some kind of property; ... the property in which one invests or may invest; also, the capital invested.”[9]
In interpreting the general meaning of the word “business” as used in Section 35-135, it is clear that the definition omits investments or the ownership of property for investment. A distinction exists as to what is a business and what is an investment. Schlesinger v. Fontenot, 235 La. 47, 56, 102 So.2d 488, 491 (1958). “It is universally and fundamentally true that even though property is acquired for revenue, it does not necessarily mean the investor is engaged in a trade or business.” Id. Thus, to import the word “investment” or ownership of property for investment into the definition of business would be a violation of the principal set forth in Gertrude Gardner, supra.
The proper meaning to be placed on a word in a statute does not depend on an isolated definition attributable to it; instead, the word and the context in which it is used shall be considered. David v. Our Lady of the Lake Hosp., Inc., 02-2675 (La.7/2/03), 849 So.2d 38, 46.; Arshad v. City of Kenner, 11-1579 (La.1/24/12), 95 So.2d 477, 487. Although not specifically defined, the Occupational License Tax Ordinance, Section 35-153, is not without *616 guidance as to the meaning, intent, and purpose of the word “business.” It is used with several other terms, and within 11ftcontext, these several terms (“trade, profession, vocation, calling or business”) are fairly synonymous. Together, their meaning is clear. There is no reason to give “business” a different connotation which is significantly broader and more inclusive than the other four terms by including investment ownership (which is already subject to ad valorem taxation).
Furthermore, the plain language of La. R.S. 47:302 provides that the sales and use tax applies to purchasers and users, not investors. Moreover, La. R.S. 47:302 specifically applies to “tangible personal property,” and thus, immovable property such as land or buildings are not subject to the provisions of La. R.S. 47:302. Therefore, the definition of business as defined in La. R.S. 47:301 is not applicable to the facts of this case.
The trial court found that appellees function solely as investment vehicles holding legal title to various apartment complexes. The trial court further found that to be engaged in business, the activity that is alleged to constitute a business must occupy a substantial portion of one’s time and attention and require some level of physical effort. The trial court found that the word “investment” is omitted from the definition of business and the parish ordinance did not impose a tax on one who merely invests in rental property. Rather, it imposes a tax on a person actively managing and operating rental property. Significantly, the trial court additionally found that appellees contractually relinquished all operational and managerial rights to 1st Lake. In this case, 1st Lake paid the occupational license tax for engaging in the business of leasing and renting the respective properties.
| nBased on the general meaning of business above,[10] we find that the trial court was not manifestly erroneous or clearly wrong in finding that appellees were not engaged in business subject to the occupational license tax.
In his second assignment of error, appellant claims that the conduct of 1st Lake, as agent for appellees, should be attributed to appellees for the purpose of determining whether appellees are engaged in business. He contends that attributing 1st Lake’s management and operation of the properties to appellees is not precluded by any of the provisions of the occupational license tax statutes or ordinances. Furthermore, he argues that this application would be consistent with the definition set forth in La. R.S. 47:301(1) which does not require the person engaging in business to directly engage in the activity, and considers a person who causes another’s engagement in an activity to be engaged in business himself.[11]
Appellant mistakenly relies on La. R.S. 47:301 and federal tax cases[12] to assert that the actions of 1st Lake, as agent, can be attributed to appellees. For the reasons stated above, La. R.S. 47:301 is inapplicable to the facts of this case. Here, we are interpreting a parish ordinance that imposes an occupational license on persons who engage in business which is factually and legally distinct from the federal cases *617 cited by appellant. There are no Louisiana cases interpreting this ordinance to attribute acts of an agent to appellees. The general definition of business does not include attributing the acts of an agent to appellees. We find that the trial court did not err in not attributing the actions of 1st Lake, as an agent, to appellees. This assignment of error is without merit.
li2In his final assignment of error, appellant contends that the applicable tax rate is located in La. R.S. 47:355, and not Section 35-175 of the Jefferson Parish tax ordinance, assuming appellees are liable for the occupational license tax. Based on the findings above, this assignment of error is moot and need not be addressed.

CONCLUSION:

For the above stated reasons, we affirm the trial court’s judgment finding that ap-pellees are not engaged in business subject to the Jefferson Parish occupational license tax and dismissing appellant’s claims against appellees.
AFFIRMED

. These defendants included: 1st Lake Realty, Inc., Breckenridge Apartments, L.L.C., Boardwalk Apartments, L.L.C., Camelot Court, L.L.C., Canterbury Square, L.L.C., Citrus Creek I Apartments, L.L.C., Citrus Creek II Apartments, L.L.C., Clearwater Properties, L.L.C., Crossings I, L.L.C., Crossings II, L.L.C., Crossroads Apartments, L.L.C., Creeks of River Ridge, Villa Verde Investors, L.L.C., Fox Run I Apartments, L.L.C., Fox Run II Apartments, L.L.C., Frenchman's Cree, L.L.C., Gallery Investments, L.L.C., Lindy Investments, L.P., Lindy Investments II, L.L.P., Lindy Investments III, L.L.P., SLS Properties, Global Equities I Limited Partnership, Lost Bayou, L.L.C., Magnolia Creek Investments, L.L.C., Norgate Investors, A Louisiana Partnership in Commendam, Natchez Landing Apartments, L.L.C., Northbridge, L.L.C., Citrus Curve, L.L.C., Park Oaks Apartments, L.L.C., Parktown, L.L.C., PEA I, L.L.C., Registry Apartments, L.L.C., Riverwood Associates, L.L.C., Sandpiper Apartments, L.L.C., Sawmill Creek Apartments, L.L.C., Shadows Apartments, L.L.C., Surfrider, L.L.C., LLS Properties, L.L.C., Turtle Creek Apartments, L.L.C., Sunscape Investments I, L.L.C., HMF Investments Co., L.L.C., Willowood Apartments, L.L.C., Elmwood Investments, L.L.P., Town Bridge Apartments, and Levee Run Apartments.

. Thirteen of the smaller properties share on-site management offices with other larger properties.

. Rents from four of the properties are deposited into separate, property specific bank accounts.

. The same language is used to define "business” in the state statute La. R.S. 47:342.

. Additionally, appellant extensively argues the application of La. R.S. 47:355 to calculate appellees occupational license tax rate. Witnesses for appellant testified that Section 35-175 or the state counter-part. La. R.S. 47:355, was used to impose or calculate the occupational license tax in this case. La. R.S. 47:355 is titled:
"Wholesale dealers in merchandise, service and rentals; Retail dealers to institutional consumers; Shipbuilders; and Contractors.”
The use of the word "rentals” in the title or use of the language in subsection B, does not make La. R.S. 47:355 applicable to the case at bar. The term "rentals” is used in connection with "wholesale dealers.” It was admitted in testimony that appellees are not wholesale dealers. Furthermore, the reference to La. R.S. 47:355 in Section 35-153 is not dis-positive to the facts of this case. Any argument or discussion regarding the application of La. R.S. 47:355 or Section 35-175 is inapplicable.

. Appellant further claims that pursuant to appellees individual federal income tax returns, appellees, by their own admission, are engaged in business. Appellees federal tax returns are not dispositive as to whether ap-pellees engaged in business subject to the parish occupational license tax. Appellant did not present any evidence or expert testimony to establish the significance of the form used and the boxes filled out by appellees on their federal tax returns.

. Webster’s II New Riverside Dictionary Revised Edition (1996) at p. 97.

. Webster’s New Universal Unabridged Dictionary (1983) atp. 245.

. Id. at p. 966.

. There are no Louisiana cases interpreting the word business as it is used in La. R.S. 47:341, et seq or Jefferson Parish Ordinance Section 35-153 et seq.

. Appellant argues that this would also be consistent with appellees individual federal tax returns. This argument is not considered. See FN 6.

. The federal cases relied on deal with federal laws and the interpretation of those laws and are not relevant to the interpretation of the parish ordinance at issue.